## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Securities and Exchange Commission,   Civil No. 10-3995 (DWF/JJK)

        Plaintiff,

v.   **MEMORANDUM OPINION AND ORDER**

True North Finance Corporation,
formerly known as CS Financing Corporation;
Capital Solutions Monthly Income Fund, LP,
formerly known as Hennessey Financial
Monthly Income Fund, LP; Capital
Solutions Distributors, LLC; Capital
Solutions Management, LP; Transactional
Finance Fund Management, LLC;
Todd A. Duckson; Michael W. Bozora;
Timothy R. Redpath; and Owen Mark Williams,

        Defendants.

_____

Eric M. Phillips, Esq., and Marlene B. Key, Esq., US Securities and Exchange Commission, counsel for Plaintiff.

Geoffrey P. Jarpe, Esq., and Philip T. Colton, Esq., counsel for Defendant True North Finance Corporation, formerly known as CS Financing Corporation.

Scott R. Carlson, Esq., Duckson & Carlson; counsel for Defendants Capital Solutions Monthly Income Fund, LP, formerly known as Hennessey Financial Monthly Income Fund, LP, and Transactional Finance Fund Management, LLC.

Andrea D. Kiehl, Esq., and Cynthia A. Bremer, Esq., Ogletree, Deakins, Nash, Smoak & Stewart, P.C.; Michael Z. Gurland, Esq., Michael Moshe Zmora, Esq., and Phillip L. Stern, Esq., Neal, Gerber & Eisenberg LLP, counsel for Defendants Capital Solutions Distributors, LLC, Capital Solutions Management, LP, Michael W. Bozora, and Timothy R. Redpath.

Lawrence J. Field, Esq., and Bryant D. Tchida, Esq., Leonard Street and Deinard, PA, counsel for Defendant Todd A. Duckson.

Andrew M. Luger, Esq., and Jenny Gassman-Pines, Esq., Greene Espel; and Brent R. Baker, Esq., and Sanna-Rae Taylor, Esq., Parsons Behle & Latimer, counsel for Defendant Owen Mark Williams.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendant True North Finance Corporation, f/k/a C.S. Financing Corporation ("True North") (Doc. No. 29) and a Motion to Dismiss brought by Defendant Owen Mark Williams ("Williams") (Doc. No. 39). For the reasons set forth below, Defendants' motions are denied.

## BACKGROUND

This matter involves the Securities and Exchange Commission's ("SEC") allegations of fraud in the offer and sale of interests in the Capital Solutions Monthly Income Fund, LP, f/k/a Hennessey Financial Monthly Income Fund, LP (the "Fund"), an unregistered investment pool. (Corrected Compl. ¶¶ 1-2.)[1] The Corrected Complaint alleges an accounting fraud at True North, an SEC-registered real estate finance company based in Minneapolis that acquired the fund in June 2009. (*Id*. ¶ 2.)

The Corrected Complaint alleges that from January 2005 to August 2009, the Fund raised approximately $74 million from approximately 450 investors across the United States. (*Id*. ¶ 3.) During the period of the alleged fraud, March 2008 through August 2009, the Fund made mezzanine real estate loans to a single borrower, Hennessey Financial, LLC and/or Hennessey Financial Note Holdings LLC (collectively,

---

[1] It appears that Plaintiff filed the "Corrected Complaint" to correct a PDF conversion error in the initial Complaint. (*See* Doc. No. 4.)

"Hennessey Financial"). (*Id*. ¶ 4.) According to the Corrected Complaint, a mezzanine real estate loan is "a loan in which the lender's security interest in the real estate collateralizing the loan is subordinate to a more senior lender." (*Id*.)

The Corrected Complaint alleges that in late 2007, Hennessey Financial began to have severe financial difficulties. (*Id*. ¶ 5.) Then, the Corrected Complaint alleges, in March 2008, Hennessey Financial's borrowers defaulted and Hennessey Financial foreclosed on them. (*Id*.) As a result of this default, Hennessey Financial defaulted on its own obligations to the Fund in May 2008. (*Id*. ¶ 7.) Then, the Fund foreclosed on Hennessey Financial's real estate interests. (*Id*.) The Corrected Complaint alleges that because the fund had no meaningful income-producing investments as of May 2008, the Fund "began mostly paying existing investors out of proceeds raised from new investors, because the Fund had very little income relative to its obligations." (*Id*. ¶ 8.)

The Corrected Complaint's specific allegations against True North and Williams, its Chief Financial Officer, involve accounting fraud. (Corrected Compl. ¶ 13.) The Corrected Complaint alleges that True North and Williams "overstated True North's revenue by as much as 99% in True North's filings with the Commission in 2008 and 2009." (*Id*. ¶ 13.) Moreover, the Corrected Complaint alleges that "Williams caused True North to improperly recognize revenue on interest from borrowers where Williams knew that the borrowers were not paying True North and that the borrowers' impaired financial condition meant that collection was not reasonably assured." (*Id*.)

The SEC alleges that True North issued a note (the "CS Financing Note") from November 2006 through approximately November 2008. (Corrected Compl. ¶ 66.) The

Corrected Complaint asserts that investors in the CS Financing Note received a fixed 10% annual return and were required to "lock up" their investment for a five-year period. (*Id*. ¶ 67.)

The SEC further alleges that True North did not follow Generally Accepted Accounting Principles ("GAAP"). Specifically, the Corrected Complaint notes that GAAP state that "revenue should not be recognized until it is realized or realizable and earned" and that revenue "is realizable only if collectability is reasonably assured." (*Id*. ¶ 68.) The Corrected Complaint also contends:

> During all relevant times, True North's financial statements contained the following statement regarding the company's revenue recognition policies, which Williams participated in drafting: "Company does not accrue interest income on loans once they are determined to be impaired. A loan is impaired when based on current information and events, it is probable that Company will be unable to collect all amounts due according to the contractual terms of the loan agreement or when the payment of interest is 90 days past due."

(*Id*. ¶ 69.)

The SEC alleges that True North "overstated its revenue on the only two investments it ever made" and that both of these investments failed. (*Id*. ¶¶ 70, 88.) The first investments that True North made occurred in April and June 2007. (*Id*. ¶ 71.) Those investments occurred when True North purchased a total of $2.5 million in unsecured notes issued by Assured Financial ("Assured"), a real estate lender affiliated with Hennessey Financial. (*Id*.) Assured encountered "severe financial difficulties" by January 2008, and True North "agreed with Assured to defer collection of payment of interest on the notes throughout 2008." (*Id*. ¶¶ 72-73.) The Corrected Complaint then

alleges that in July 2008, "Assured formally notified True North that Assured's senior leader was foreclosing on Assured's collateral and that Assured might not have sufficient proceeds to repay True North." (*Id.* ¶ 73.) Then, the SEC alleges, in the third quarter of 2008, True North "charged off all of the value of the Assured notes and ceased recognizing revenue from Assured." (*Id.*)

The Corrected Complaint asserts that in approximately January 2008, "Williams learned . . . that Assured was having cash flow difficulties and therefore could not stay current on its interest obligations to True North." (*Id.* ¶ 74.) The Corrected Complaint contends that during 2008, Williams "caused True North to record approximately $312,000 in revenue from Assured in its public filings with the Commission," a number that "reflected approximately 56% of True North's 2008 revenues." (*Id.* ¶ 75.)

The Corrected Complaint further alleges that True North's revenue recognition on its loan to Assured violated GAAP. (*Id.* ¶ 76.) Specifically, the Corrected Complaint alleges:

> As Williams knew, by January 2008 Assured's poor financial condition had caused True North to agree with Assured to defer interest payments to True North for all of 2008. As Williams knew, by July 2008—before True North had completed its second quarter 2008 financial statements— Assured had formally notified True North that Assured's senior lender was foreclosing on Assured's *collateral* and that Assured might not have sufficient proceeds to repay True North. Under these circumstances, collectability was not reasonably assured.

(*Id.* ¶ 76.) Further, the Corrected Complaint asserts:

> Moreover, as Williams knew, as of at least the second quarter of 2008, payment of interest from Assured was 90 days past due based on True North's original agreements with Assured, meaning that recognizing revenue conflicted with True North's own revenue recognition policy.

5

> Therefore, Williams' causing of True North to recognize revenue from Assured rendered True North's revenue recognition policy materially misleading.

(*Id.* ¶ 77.)

The Corrected Complaint further details True North's second investments in 2008, in providing a line of credit to Real Equity Solutions ("RES"). (*Id.* ¶ 78.) True North loaned approximately $2.069 million to RES. (*Id.* ¶ 79.) RES in turn loaned this money to two borrowers to finance the construction of a single-family home in Marin County and two single-family homes in San Francisco. (*Id.*) The Corrected Complaint alleges that in May 2008, "RES informed Williams and True North that the borrower of the San Francisco loan had misappropriated the borrowings from RES and caused other defaults." (*Id.* ¶ 80.) Further, the Corrected Complaint asserts that in November 2008, "RES sent a notice of default to the borrower on the Marin County loan based on payment and other defaults." (*Id.* ¶ 81.) The Corrected Complaint alleges that because of these defaults, RES did not pay True North any of the principal or interest on these two loans during 2008. (*Id.* at 82.) In August 2008, True North agreed to defer its collection of principal and interest due from RES. (*Id.* at 83.) The Corrected Complaint alleges that this agreement was extended several times in 2009. (*Id.*)

The Corrected Complaint further asserts that True North overstated its revenue related to RES in its public filings with the Commission. Specifically, the Corrected Complaint alleges:

> During 2008, True North recorded approximately $213,000 in revenue from RES in its public filings with the Commission. This total reflected approximately 38% of True North's 2008 revenues. Additionally, True

6

> North recorded approximately $76,000 in revenue from RES in its first quarter 2009 Form 10-Q. This total reflected an overstatement of revenue by approximately 99%.

(*Id.* ¶ 84.)

The Corrected Complaint asserts that True North's revenue recognition of the RES loan was improper under GAAP. (*Id.* ¶ 85.) The Corrected Complaint alleges Williams knew in May 2008 that RES informed True North that its borrower on the San Francisco loan had misappropriated loan proceeds and caused other defaults. (*Id.*) The Corrected Complaint further alleges that in November 2008, RES had served a notice of default on the borrower of the Marin County loan. (*Id.*) The Corrected Complaint asserts that RES did not repay True North until late 2009, so collectability was not reasonably assured. (*Id.*)

The Corrected Complaint alleges that Williams knew that payment of interest from RES was more than ninety days past due and, as a result, True North's recognition of revenue from RES conflicted with True North's own revenue recognition policy. (*Id.* ¶ 86.) Further, the Corrected Complaint alleges, "Williams' causing of True North to recognize revenue from RES rendered True North's revenue recognition policy materially misleading." (*Id.*)

Finally, as to True North's revenues, the Corrected Complaint alleges that Williams "caused True North to make untimely disclosures about material events concerning True North's loans to RES." (*Id.* ¶ 87.)

The Corrected Complaint also contains allegations regarding True North's Form S-1 registration statement filed in 2009 after True North merged with the Fund.

7

(*Id.* ¶ 94.)  The Corrected Complaint alleges that Williams caused True North's Form S-1 registration statement to "contain accounting misstatements, including revenue from True North's year-end 2008, which was misstated by 95%."  (*Id.* ¶ 96.)  The Corrected Complaint also asserts that "[t]he registration statement also includes unaudited financial statements for the first three quarters of 2009, containing True North's first quarter of 2009, which was misstated by 99%, and revenue from True North's second and third quarters of 2009, which contained misstated revenue that reflected accrued but unpaid interest from RES."  (*Id.* ¶ 96.)

It is on these facts that the SEC asserts the following counts related to True North and Williams:

>Count I: Violations of Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5 (against all Defendants);
>
>Count III:  Violations of Section 17(a)(1), (2), and (3) of the Securities Act, 15 U.S.C. § 77q(a)(1), (2), and (3) (against all Defendants);
>
>Count IV:  Violations of Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1, 15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1 (against Williams);
>
>Count V: Violations of Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2 (against Williams);
>
>Count VI:  Violations of Exchange Act Rule 15d-14, 17 C.F.R. § 240.15d14 (against Williams);
>
>Count VII:  Violations of Exchange Act Section 15(d), 15 U.S.C. § 78o(d), and Rules 12b-20, 17 C.F.R. § 240.12b-20, 13a-1, 17 C.F.R. § 240.13a-1, and 13a-13, 17 C.F.R. § 240.13a-13 (against True North);
>
>Count VIII:  Aiding and Abetting Violations of Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d) and Rules 12b-20,

      17 C.F.R. § 240.12b-20, 13a-1, 17 C.F.R. § 240.13a-1, and 13a-13, 17 C.F.R. § 240.13a-13 (against Williams);

      Count IX: Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(b)(2)(A) and (b)(2)(B) (against True North); and

      Count X: Aiding and Abetting Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(b)(2)(A) and (b)(2)(B) (against Williams).

(Corrected Compl. at ¶¶ 97-100, 104-128.)

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

9

level." *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

True North and Williams move to dismiss pursuant to Federal Rules of Procedure 12(b)(6) and 9(b), asserting that the Corrected Complaint does not satisfy the particularity requirements to support an accounting fraud claim.  Federal Rule of Civil Procedure 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  To satisfy this rule, a pleading that alleges fraud must set forth the "who, what, when, where, and how" of the alleged fraud.  *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997).  In addition, Section 10(b) requires the pleading of scienter—the "intent to deceive, manipulate, or defraud." *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 653 (8th Cir. 2001).  Section 17(a)(2) and (3) do not require the pleading of scienter.  *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980).

The parties appear to agree that the sufficiency of the Corrected Complaint should be judged by Rule 9(b), and not by the Private Securities Litigation Reform Act ("PSLRA"). (See Pl.'s Mem. in Opp. at 14; Def. True North's Reply Mem. at 1.)  Yet True North and Williams argue that the SEC has failed to properly plead facts in support

of the requisite state of mind, suggesting an even higher pleading standard for scienter than Rule 9(b) alone imposes. (Def. Williams's Reply Mem. at 4 ("Rule 9's use of the term 'generally' does not grant license to the complaining party to disregard entirely the requirement to plead actual facts in support of the requisite state of mind. Instead, the term 'generally' simply grants the complaining party some flexibility to plead its claim without carrying the full burden of proof before discovery has begun."); Def. True North's Reply Mem. at 5-10 (suggesting that the SEC must plead "a strong inference of scienter"). Although the Court believes that *Twombly* sets forth the appropriate standard regarding scienter, the Court finds that the Corrected Complaint is sufficient, irrespective of which scienter standard applies.

True North and Williams assert that the SEC's Corrected Complaint fails in several regards.[2] First, True North and Williams contend that the Corrected Complaint's allegations regarding extension of the terms of repayment on the Assured Financial and RES financings, allegedly triggering a GAAP violation, do not rise to the level of securities fraud. True North and Williams contend that creditors can modify repayment terms with a debtor, and do so virtually every day, without constituting fraud. True North and Williams assert that the Corrected Complaint is conclusory and that it fails to recognize that True North wrote off much of the Assured notes in the second quarter, pointing to True North's Forms-10Q in support of this argument. True North and Williams also assert that the Complaint fails to reference a specific GAAP provision that was violated. In addition, True North and Williams contend that the SEC has failed to

---

[2] Williams has adopted True North's arguments. (Williams's Mem. in Supp. at 1.)

11

plead any facts regarding RES's financial condition or its inability to repay the True North loans. True North and Williams assert that such facts, including facts related to the value of the collateral and the condition of the San Francisco real estate market, must be pleaded in order to sustain the complaint. Finally, True North and Williams contend that even if the Corrected Complaint otherwise meets the requirements of Rule 9(b), the SEC Complaint fails to include any specific allegations of scienter.

The Corrected Complaint survives True North's and Williams's motions to dismiss. The Corrected Complaint alleges that True North "overstated its revenue on the only two investments it ever made." (Corrected Compl. ¶ 70.) Specifically, the SEC alleges that during the period relevant to this action, Williams knew that RES and Assured could not stay current on their obligations to True North due to their financial difficulties. (*Id*. ¶¶ 73-74, 76, 80-82, 84.) The Corrected Complaint describes Williams' knowledge of RES's and Assured's financial conditions and that Williams had specific knowledge of their inability to pay. (*Id*.) Further, the Corrected Complaint contends that despite Williams' knowledge of RES's and Assured's inabilities to pay True North, and True North's deferrals of RES's and Assured's payments, Williams caused True North to overstate and improperly recognize revenue from these two borrowers. (*Id*. at 72-87.) The Corrected Complaint alleges that this revenue recognition violated GAAP and True North's own revenue recognition policies. (*Id*. at ¶¶ 68-69, 76-77, 85-86.)

These allegations sufficiently describe the who, what, when, where, and how of the alleged fraud in accordance with Rule 9(b). Many of True North's and Williams's arguments seem more appropriate for summary judgment. Moreover, the Court finds no

support for True North's and William's contentions that the SEC was to directly reference the GAAP provision that was violated. And True North's and Williams's assertions regarding the relevance of the Form 10-Q filing seem premature at this stage of the proceedings. Finally, the factual allegations in the Corrected Complaint sufficiently plead scienter, both generally and specifically.

Thus, assuming all facts in the Corrected Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to the SEC, the Court finds that the Complaint contains sufficient allegations to meet the Rule 9(b) and scienter pleading requirements. As a result, True North's and Williams' Motions to Dismiss are denied.

Therefore, **IT IS HEREBY ORDERED** that:

1. Defendant True North Finance Corporation's Motion to Dismiss (Doc. No. [29]) is **DENIED.**

2. Defendant Owen Mark Williams' Motion to Dismiss (Doc. No. [39]) is **DENIED.**

Dated:  April 6, 2011                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge