# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Securities and Exchange Commission, | Civ. No. 10-3995 (DWF/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| Capital Solutions Monthly Income Fund, LP, f/k/a Hennessey Financial Monthly Income Fund, LP; Transaction Finance Fund Management, LLC; and Todd A. Duckson, | |
| Defendants. | |

---

Benjamin J. Hanauer, Esq., Daniel J. Hayes, Esq., Eric M. Phillips, Esq., and Marlene B. Key, Esq., counsel for the United States Securities & Exchange Commission.

Bryant D. Tchida, Esq., and Lawrence J. Field, Esq., Stinson Leonard Street LLP, counsel for Defendants Capital Solutions Monthly Income Fund, LP, Transaction Finance Fund Management, LLC, and Todd A. Duckson.

---

# INTRODUCTION

This matter is before the Court on Plaintiff Securities and Exchange Commission's ("SEC") Motion for Remedies Against Defendants Todd A. Duckson ("Duckson"), Transactional Finance Fund Management, LLC ("TFFM"), and the Capital Solutions Monthly Income Fund, LP, f/k/a Hennessey Financial Monthly Income Fund, LP ("the Fund") (collectively, "Defendants"). (Doc. No. 360.) For the reasons set forth below, the Court grants in part and denies in part the motion.

## BACKGROUND

The SEC brought this action under various securities laws based on allegations of fraud in the offer and sale of interests in the Fund, an unregistered investment pool.  (*See generally* Doc. No. 163, Second Am. Compl.)  The SEC brought suit against a number of entities, including the Fund (*see generally id.*), but at the time the case went to trial, the only remaining Defendants were the Fund, TFFM, and Duckson (*see* Doc. No. 334).[1] TFFM was the Fund's investment Manager.  Duckson, an attorney, formed, owned and controlled TFFM.

On October 22, 2013, after approximately five weeks of testimony and the admission of over 300 exhibits (*see* Doc. No. 358), the jury returned a verdict finding the Fund, TFFM, and Duckson liable on Counts I, II, and III of the Second Amended Complaint.  (Doc. No. 355 ("Verdict").)  The Special Verdict Form addressed two time periods separately:  (1) March 2008 through late October 2008 ("Period 1"); and (2) October 2008 through December 2009 ("Period 2").  (*Id.*)  Specifically, with respect to Period 1, the jury found liability for:  (1) direct violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, promulgated thereunder ("Section 10(b) & Rule 10b-5"), by the Fund; (2) aiding and abetting the Fund's violations of Section 10(b) & Rule 10b-5 by Duckson; and (3) direct violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") by Duckson and the Fund.

---

[1]     All claims against the following Defendants were dismissed:  Capital Solutions Management, LP (Doc. Nos. 195 & 199); Capital Solutions Distributors, LLC (Doc. Nos. 196 & 200); Michael W. Bozora (Doc. Nos. 197 & 201); and Timothy R. Redpath (Doc. Nos. 198 & 202).

(*Id.*)  With respect to Period 2, the jury found liability for the following:  (1) direct violations of Section 10(b) & Rule 10b-5 by Duckson, the Fund, and TFFM; and (2) direct violations of Section 17(a) of the Securities Act by Duckson and the Fund.[2] (*Id.*)  Additionally, the jury, as finder of fact, concluded that, during Periods 1 and 2, Duckson and the Fund's direct violations of Section 17(a) were made knowingly, with recklessness, and negligently.  (*Id.*)  The jury also necessarily found that Defendants' violations of Section 10(b) & Rule 10b-5 were made knowingly or with reckless disregard.  (Doc. No. 354 ("Jury Instructions").)

The SEC now seeks remedial relief against Defendants in the form of: (1) permanent injunctions from committing further violations of the laws and regulations Defendants were found to have violated; (2) a bar against Duckson from serving as an officer or director of publicly held companies in the future; (3) disgorgement of funds received from a number of sources; and (4) civil penalties.  (*See generally* Doc. No. 362.) The SEC also seeks entry of final judgment against all Defendants.  (*Id.*)

## DISCUSSION

Courts have broad equitable powers over securities violations, including questions of equitable relief.  *See* 15 U.S.C. § 78aa (Section 27); *SEC. v. O'Hagan*, 901 F. Supp. 1461, 1471 (D. Minn. 1995) (citing *Chris–Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 390 (2d Cir. 1973), *cert. denied,* 414 U.S. 910 (1973)) ("Once the equity jurisdiction of the district court properly has been invoked, the court has power to order

---

[2]     The jury returned a verdict finding TFFM not liable for direct violations of Section 17(a) of the Securities Act.

all equitable relief necessary under the circumstances.").  The SEC bears the burden of

showing it is entitled to the remedies it seeks by a preponderance of the evidence.  *SEC v.*

*Bauer*, Civ. No. 03-1427, 2012 WL 2217045, at *1 (E.D. Wis. 2012) (citing *Steadman v.*

*SEC*, 450 U.S. 91, 103 (1981)).

## I.    Permanent Injunctions

The SEC requests permanent injunctions restraining and enjoining Duckson,

TFFM, and the Fund from future violations of each of the provisions of law and rules

proven at trial.  Courts have authority to enter permanent injunctions under Section 21(d)

of the Exchange Act and Section 20(b) of the Securities Act.  15 U.S.C. § 78u(d);

15 U.S.C. § 77t.  For a permanent injunction, the SEC must demonstrate that:  (1) a

violation of the securities laws has occurred; and (2) there is a reasonable probability of

the Defendants engaging in future violations if not enjoined.  *SEC v. Comserv Corp.*, 908

F.2d 1407, 1412 (8th Cir. 1990).

Here, the first requirement that a violation of the securities laws has occurred has

been met.  The jury returned a verdict against all Defendants finding at least one violation

of the securities laws for each Defendant.

As to the second requirement, that the SEC demonstrate that there is a reasonable

probability of future violations, "[t]he existence of past violations may give rise to an

inference that there will be future violations."  *SEC. v. Brown*, 579 F. Supp. 2d

1228, 1238 (D. Minn. 2008), *aff'd*, 658 F.3d 858 (8th Cir. 2011) (quoting *SEC v. Murphy,*

626 F.2d 633, 655 (9th Cir. 1980)); *SEC v. Boey*, Civ. No. 07- 39, 2013 WL 3805127, at

*3 (D.N.H. July 22, 2013) (citations omitted).  However, the SEC must "go beyond the

mere facts of past violations and demonstrate a realistic likelihood of recurrence." *Boey*, 2013 WL 3805127, at *3 (citing *SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 99-100 (2d Cir. 1978)). "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations[.]" *Brown*, 579 F. Supp. 2d at 1238 (citing *Murphy,* 626 F.2d at 655). Courts have weighed a number of factors to determine whether a permanent injunction is appropriate: (1) the degree of scienter involved; (2) the isolated or repeated nature of the violations; (3) the defendant's recognition of the wrongful nature of her conduct; and (4) whether, because of the defendant's professional occupation, future violations could be anticipated. *SEC v. Shanahan*, Civ. No. 07-2879, 2010 WL 173819, at *9 (D. Minn. Jan. 13, 2010) (citations omitted).

The SEC argues that all of the relevant factors have been met: there was a high degree of scienter in this case, and the relevant parties knew of and withheld information; the conduct was recurrent and over a long period of time; the parties have failed to take responsibility; and the parties are in a position to do it again. The Court agrees.

First, as the SEC notes, the jury's findings indicate a high degree of scienter. "A permanent injunction is particularly appropriate in cases involving a high degree of scienter." *Id.* (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996)). Here, the jury found that both Duckson and the Fund acted "knowingly, recklessly, and negligently" with respect to the SEC's Section 17(a) claims, that each of the Defendants violated Section 10(b) & Rule 10b-5, which requires knowledge or reckless disregard, and that Duckson "aided and abetted" the Fund's 10(b) & Rule 10b-5 violations, which

also requires knowledge.  (*See* Jury Instructions.)  The evidence presented at trial

supports the jury's verdict as it relates to scienter.  Evidence showed that all of the

Defendants were aware of key facts constituting the violations at issue (i.e. false offering

documents, and misstatements and omissions to investors), and that they knowingly

withheld or misrepresented those facts to investors.  Additionally, once the Fund

collapsed, Defendants continued to pay themselves and not investors.  Finally, Duckson

knew of the violations as the primary drafter of certain relevant offering documents while

a partner at a law firm, and became further involved as the owner, general partner, and

investment manager of the Fund.  (*See* Doc. No. 363 ("Phillips Aff.") ¶ 2, Ex. 1 ("Trial

Tr.") at 1679, 1750-51, 2106-07, 2375.)

Second, the violations here were not an "isolated occurrence."  A permanent

injunction "is particularly within the court's discretion where a violation was founded on

systematic wrongdoing, rather than an isolated occurrence, and where the court views the

defendant's degree of culpability and continued protestations of innocence as indications

that injunctive relief is warranted . . . ."  *SEC. v. Dibella*, Civ. No. 04-1342, 2008 WL

6965807, at *12 (D. Conn. Mar. 13, 2008) *aff'd*, 587 F.3d 553 (2d Cir. 2009) (internal

citations and quotations omitted).  Defendants' conduct occurred over the better part of

two years, and was repeated a number of times, with a number of different investors.  The

offering documents presented to investors were modified and re-issued with false

information on four occasions.  This differs from cases cited by Defendants where the

misconduct was isolated.  For example, in *Reserve Fund*, the court concluded that

because the entities had operated for decades without significant sanctions, and the key

individual engaged in the negligent conduct at issue over a period of less than 36 hours, an injunction was not appropriate. *In re Reserve Fund Sec. & Deriv. Litig.*, Civ. Nos. 09-2011 & 09-4346, 2013 WL 5432334, at *23 (S.D.N.Y. Sept. 30, 2013)*; see also SEC. v. 800america.com, Inc.*, Civ. No. 02-9046, 2006 WL 3422670, at *11 (S.D.N.Y. Nov. 28, 2006) (holding that because one defendant had only engaged in "an isolated incident" the request for a permanent junction was properly denied).  Additionally, the number of measures taken to ensure money kept flowing in to perpetuate Defendants' plan, and to avoid detection by investors, further supports the Court's view of these activities as a "continuing course of conduct" and not as mere isolated incidents.

Defendants claim that the verdict form was so ambiguous that it is impossible to say that Defendants exhibited any sort of pattern of or repeated misconduct.  The verdict form itself, taken in its totality, belies this argument.  The jury found against Defendants for more than one time period and in a number of different ways, and did so for actions requiring knowledge.  For example, the jury found that Duckson aided and abetted the Fund's violations during the time period from March 2008 to late October 2008 and that he was a primary violator for the time period from late October 2008 through December 2009, based on, at a minimum, November 2008 documents.  Activities during both periods were related to each other.  Moreover, documents do not write themselves— Defendants were participatory in more than a single incident of misrepresentation.

Additionally, the jury verdict supports what the evidence presented during trial shows.  Plaintiff proved its case.  And, the Court's evaluation of the evidence and its consideration of the credibility of witnesses at trial clearly supports the jury's verdict that

Defendants acted as described above–knowingly and in a manner that caused serious harm to investors.  (*See* Phillips Aff. ¶ 16, Ex. 15 (*SEC v. Das*, Civ. No. 10-102, at 4-7 (D. Neb. May 29, 2012)) (drawing from the trial record in support of the jury's verdict when determining remedies).)

Defendants' reliance on *SEC v. Solow*, 554 F. Supp. 2d 1356 (S.D. Fla. 2008), to show that the jury verdict was ambiguous and that the Court denied certain remedial relief as a result of the "ambiguous" verdict form, is also misplaced.  In *Solow*, the court awarded approximately $3 million in civil penalties, but declined to impose an additional $780,000 penalty based on a Seventh Circuit holding related to unclear jury verdicts. *Solow*, 554 F. Supp. 2d at 1367.  However, the court imposed extensive injunctive relief, disgorgement, and third-tier civil penalties (*id.* at 1368), and specifically found "unpersuasive" the defendant's argument that:

> Because there were no special interrogatories and the jury responded to only a general verdict form, there can be no means of ascertaining the grounds for liability, and, as such, there can be no imposition of a third-tier penalty . . . because [the defendant] may have been found liable for mere negligence pursuant to [the securities laws].

*Id*. at 1366.  Thus, Defendants' reliance on *Solow* to argue that the Court should resolve any ambiguities relating to the jury verdict in favor of Defendant is misplaced. Moreover, any concerns as to Defendants' state of mind in this case do not exist here because the verdict form explicitly found that Defendants acted knowingly or recklessly with respect to all claims.  *Id.* at 1366 (considering the defendant's argument that third-tier penalties could not be awarded because the defendant may have only been

found liable for "mere negligence" which is insufficient for such penalties). In sum, the jury verdict form was not ambiguous and supports remedial relief in this case.

Third, it appears that no degree of responsibility has been taken by any of the Defendants; instead, Duckson has blamed the SEC. (*See* Trial Tr. at 3982-3985; Doc. No. 366 at 7-9; Phillips Aff. ¶ 6, Ex. 5.) Thus, this case differs markedly from a case like *SEC v. O'Meally*, Civ. No. 06-6483, 2013 WL 878631 (S.D.N.Y. March 11, 2013), where the court found that the defendant had in fact taken responsibility when he unambiguously stated: "I alone am responsible for my conduct and I fully accept that responsibility." *O'Meally*, 2013 WL 878631, at *2.

Finally, and perhaps most importantly, the SEC has demonstrated a likelihood of similar violations in the future by Defendants. Duckson has set up or participated in the establishment of business ventures in the past, and could do so again—he has shown that he is entrepreneurial. This distinguishes Duckson from someone like the defendant in *SEC v. Bauer* who conducted insider trading while at a mutual fund company and was unable to find work afterwards and who did not create a fraudulent entity or system herself. *SEC v. Bauer*, Civ. No. 03-1427, 2012 WL 2217045, at *2 (E.D. Wis. June 15, 2012). Currently, Duckson is a licensed attorney who owns and works with the DC Law Chartered law firm. (Phillips Aff. ¶ 15, Ex. 14.) Duckson also organizes and manages a limited liability company related to licensing and permitting for sewage treatment operations in North Dakota called Wastewater Ecology Group ("Wastewater"). (Doc. No. 370 ("Second Phillips Aff.') ¶¶ 4-7, Exs. 3-6.) Wastewater includes Duckson's partner, Timothy Redpath, and also involves raising money to support the business.

(Second Phillips Aff. ¶ 4, Ex. 3.)  This is similar activity to the activities that led to this case (i.e. businesses working to raise money from potential investors), and could easily result in future violations.  A party does not need to be in the exact same position in order for there to be a likelihood that he will violate securities laws in the future.  *See SEC v. Gowrish*, Civ. No. 09-5883, 2011 WL 2790482, at *6 (N.D. Cal. July 14, 2011).  And while it would not be prudent for Duckson to utilize TFFM and the Fund to conduct future business ventures, because of the interwoven nature of those enterprises with Duckson himself, the Court believes that future violations by TFFM and the Fund may be likely.  Until those entities are definitively non-operational, they could still violate the securities laws.  Finally, this is not a case where a meaningful amount of time has passed since the wrongful conduct, thereby making it unlikely that recurring violations might occur.  *Cf. Boey*, 2013 WL 3805127, at *3 (twelve years had passed since the fraudulent conduct making similar violations in the future unlikely).  Therefore, the SEC has shown a realistic likelihood of reoccurrence.

In sum, considering the totality of the circumstances, all of the above factors weigh in favor of a permanent injunction in this case.  Accordingly, the Court enjoins all Defendants from future violations of each of the provisions of law and rules proven at trial.

## II.    Officer and Director Bar

The SEC requests that the Court impose a permanent bar against Duckson from acting as an officer or director of a public company.  A court may prohibit a person from acting as an officer or director of a public company because of securities violations.

15 U.S.C. § 78u(d)(2); 15 U.S.C. § 77t(e).  The party requesting such a bar must

demonstrate the defendant's unfitness to serve as an officer or director.  15 U.S.C.

§ 78u(d)(2); 15 U.S.C. § 77t(e).  When examining an officer and director bar, courts

consider:  the egregiousness of the violations; the defendant's repeat offender status; the

defendant's role in the fraud; the defendant's degree of scienter; and the likelihood that

misconduct will recur.  *Shanahan*, 2010 WL 173819, at *16 (citing *SEC v. First Pac.

Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998)).

Considering the arguments of counsel, the jury's verdict and the evidence

presented at trial, the Court concludes that an officer and director bar is appropriate here.

For all of the reasons listed above, the Court finds that Defendants' actions demonstrated

a high level of scienter.  Furthermore, additional evidence at trial speaks directly to the

egregiousness of Defendants' action.  To keep their ongoing scheme afloat, Defendants

developed documents and e-mails and made statements to investors that attempted to

convince new investors that their investments were unique.  Defendants represented to

potential investors that while other investments were failing as a result of the crashing

economy, Defendants' investments would actually benefit from the failing economy.  At

the same time, Defendants knew that their business model and their past similar

investments had failed.  Defendants purposefully re-named and re-worked their products

in a way that worked around past issues and induced investment so they could attain

additional funding.  For example, Defendants changed the Fund's name in October 2008,

launched new notes in February 2009, merged the Fund in June 2009, and then tried to

offer new notes to the public.  (*See* Trial Tr. at 1819-20; 2062; 2964-71; 3077-78; 3087-

3088; Phillips Aff. ¶ 11, Ex. 10 (Trial Ex. 1560).)  All the while, Defendants continued

paying themselves, notwithstanding that they could not pay all of their investors.

Defendants paid out management fees, legal fees, and related-party transaction fees to

themselves.  Finally, Duckson's claim that he has no intention of violating any laws in

the future is not enough to negate a likelihood of future misconduct, particularly in light

of the issues outlined above with respect to Duckson's current and other potential future

activities.  Thus, the Court concludes that all of these facts together support an

officer/director bar against Duckson for a period of ten years.[3]

## III.   Disgorgement

The SEC requests that the Court order disgorgement against the Defendants.

Courts may order disgorgement of ill-gotten profits once a violation of securities law has

been found.  *SEC. v. Lawton*, Civ. No. 09-368, 2011 WL 494888, at *3 (D. Minn.

Feb. 7, 2011) *aff'd*, 449 F. App'x 555 (8th Cir. 2012) (citing *SEC. v. Ridenour,* 913 F.2d

515, 517 (8th Cir. 1990)).  "The district court has 'broad discretion' in both determining

whether or not to order disgorgement and in calculating the appropriate amount to be

disgorged."  *SEC. v. Murray*, Civ. No. 05-4643, 2013 WL 839840, at *1 (E.D.N.Y.

Mar. 6, 2013), appeal dismissed (July 26, 2013) (citing *First Jersey,* 101 F.3d at 1474;

*see also SEC v. Rosenthal,* 426 F. App'x 1, 3 (2d Cir. 2011)).  Disgorgement is an

equitable remedy aimed at preventing unjust enrichment resulting from a defendant's

---

[3]      Although it is not a basis for the Court's decision, the Court notes that Duckson
states that he has not sought, and does not intend to seek in the future, a position as an
officer or director of a public company.  (Doc. No. 366 at 13 (citing Doc. No. 367
("Duckson Decl.") ¶ 9).)

wrongdoing.  *SEC v. O'Hagan*, 901 F. Supp. 1461, 1468 (D. Minn. 1995).  Disgorgement

need not be exact, instead, courts need only find that the amount sought is a reasonable

approximation of gains that are causally connected to a violation.  *Id.*  As long as the

measure of disgorgement is reasonable, the wrongdoer should bear the risk of any

uncertainty.  *SEC v. Patel,* 61 F.3d 137, 140 (2d Cir. 1995).

The SEC seeks disgorgement for a number of categories of funds.  The Court

examines each request separately below.

### A.      The Fund

The SEC initially sought disgorgement from the Fund for:  (1) $21,845,888 raised

from investors between March 2008 and December 2009; and (2) $4,443,548 in

prejudgment interest on that amount.  However, in its Reply Memorandum, the SEC

concedes that the amount be reduced to reflect money returned to investors in the form of

capital via monthly distributions.  (Doc. No. 369 at 24; Doc. No. 366 at 16.)  Thus, the

SEC requests disgorgement in the amount of $12,063,430, and corresponding

prejudgment interest in the amount of $2,519,751, for a total of $14,583,181.  (Doc.

No. 371 ("Second Saylor Aff.") ¶ 18, Ex. E.)  The Court agrees that monthly distributions

received by investors are properly excluded and will consider the $14,583,181 amount.

The SEC argues that the $12,063,430 amount was raised fraudulently from

investors based on misrepresentations and omissions, and without this money, the Fund

would have been unable to exist.  The SEC accountant, Wilburn Saylor, Jr. ("Saylor")

calculated this amount based on the Fund's bank records, which reflects the money raised

from investors, and also excludes money from other sources such as cash on hand or cash equivalents.  (Doc. No. 364 ("Saylor Aff.") ¶¶ 14-15 & Ex. C.)

Defendants argue that courts frequently decline to award disgorgement and should do so here.  Additionally, Defendants argue that the verdict form was ambiguous, that calculations by the SEC's expert accountant were faulty, and that the SEC failed to connect the amounts at issue to specific investors.

The Court finds that the SEC has shown a reasonable approximation of the funds to be disgorged and has sufficiently shown that those funds were causally connected to the fraud as determined by the jury.  *See Brown*, 579 F. Supp. 2d at 1245.  The SEC seeks disgorgement from the Fund for the money raised from investors in Fund limited partnership interests and Series I Preferred Notes during the March 2008 through December 2009 period of the fraud.  (Saylor Aff. ¶¶ 14-15 & Ex. C.)  It is not disputed that the evidence at trial showed that funds were obtained from new investors during the relevant time periods.  A number of witnesses testified that they would not have invested in the Fund if they had known that the Fund's original and only borrowers were out of business.  The SEC further offers Duckson's testimony that he left Hinshaw and formed TFFM, taking control of the Fund, at the end of 2008 for the prospect of earnings.  (Trial Tr. at 3622-3625.)  The plan was to raise money from new investors and to sell acquired real estate from Hennessey Financial's foreclosure.  (*Id.*)  Duckson's work as new manager was premised on the Fund obtaining money from investors.  Finally, the Fund would have been forced to liquidate without new investors.

Defendants' argument that the SEC failed to differentiate among Fund investors does not change this result. The evidence admitted at trial shows that investors invested millions of dollars in something that had no meaningful income, and that also had substantial liabilities at that the time of their investment. The investors, however, knew none of this. Because the Fund could not have continued without such investors, all money received was so interrelated to the misrepresentations and omissions that they all constitute ill-gotten gains. Defendants bear the risk of any uncertainty in the disgorgement analysis, and have failed to overcome any uncertainty on this issue. *See, e.g., SEC v. First City Fin. Corp*, 890 F.2d 1215, 1232 (D.C. Cir. 1989). Similarly, Defendants have failed to present evidence to demonstrate that Saylor's analysis is erroneous. Through his affidavit and trial testimony, Saylor competently explains his calculations in detail and addresses Defendants' arguments relating to alleged omissions.[4]

Accordingly, the Court will order disgorgement against the Fund in the amount of $12,063,430. Prejudgment interest is also appropriate here. *See, e.g., Brown*, 579 F. Supp. 2d at 1245; *Lawton*, 2011 WL 494888, at *5 (D. Minn. Feb. 7, 2011) (ordering prejudgment interest on disgorgement amount). Therefore, the Court will also order prejudgment interest in the amount of $2,519,751.

---

[4]     Again, Defendants' continuing argument that the verdict form is ambiguous and that the Court cannot determine the appropriate amount of disgorgement lacks merit. As explained above, the jury verdict form was not ambiguous, and the Court's evaluation of the evidence at trial establishes the losses and egregious behavior detailed above. This includes the view that Defendants' omissions and misrepresentations spanned more than just three weeks.

**B.     TFFM & Duckson**

With respect to Duckson and TFFM, the SEC seeks disgorgement jointly and severally for: (1) $2,960,771 that TFFM received (and transferred to Transactional Finance) between November 2008 and March 2012; and (2) $340,862 in prejudgment interest on that amount.  Specifically, the SEC argues that the evidence at trial showed that the funds were procured by TFFM between November 2008 and March 2012 through false and misleading offering documents related to the Fund.  (Saylor Aff. ¶¶ 10, 18 & Exs. A, E (Trial Ex. 794).)  Saylor calculated this amount based on bank records for TFFM and Transaction Finance and determined that $2,960,771 was the net amount transferred to TFFM from November 2008 to January 2012.  (Saylor Aff. ¶ 16 & Ex. A.)

The Court finds that the SEC has also shown a reasonable approximation of the profits to be disgorged with respect to TFFM and Duckson and has sufficiently shown that those profits were causally connected to the fraud as determined by the jury.  *See Brown*, 579 F. Supp. 2d at 1245.  First, as detailed above, the funds received by Duckson and TFFM during the time period were the result of misrepresentations and omissions, including those in offering documents, and would not have been received otherwise.  Second, the SEC points to evidence at trial that by late 2009, Duckson caused the Fund to stop paying any investors.  (Trial Tr. at 1892-93, 1900-03.)  However, despite stopping payments to investors, Duckson caused the Fund to continue to pay TFFM fees through 2012.  (*Id.* at 1893-1906.)  Additionally, TFFM remitted these fees to Transactional Finance, which was owned by Duckson.  (*Id.* at 1897; Saylor Aff. ¶ 10, Ex. A (Trial

Ex. 794).)  These funds were thus wrongfully received by Duckson and TFFM and should have instead gone to investors.

Defendants assert that those funds sought to be disgorged must have been paid during the period of the fraud.  However, the funds at issue are "ill-gotten" regardless of when Duckson actually received them.  The simple question is whether the "profits, fees, and other compensation derived from wrongdoing."  *See SEC v. Seghers*, 298 Fed. App'x. 319, 336-37 (5th Cir. 2008) (unpublished).  Here, they were.  Absent wrongdoing, the funds would not have come to Duckson or TFFM.  *See id.* ("If the Commission shows a causal relationship between the defendant's wrongdoing and the amount by which he was unjustly enriched, that amount of money may be disgorged even if the defendant has otherwise disposed of, reinvested, or spent the particular assets that he wrongfully obtained.").

Defendants also argue that the SEC fails to differentiate any wrongful activity from other functions of value to the company performed by Duckson.  However, in this case, even if Duckson performed "legitimate" work, that work was so inextricably tied to the fraudulent procurement of funds, it cannot be separated.  The entities at issue were primarily set up for the purposes of the fraud and Duckson's work was related to that fraudulent activity.  Those cases cited by Defendants differ from this case because, here, Duckson's entire job was to obtain funds from new investors and run the fraudulent scheme and entities—the causal connection is clear.  *Cf. SEC v. Kelly*, 765 F. Supp. 2d 301 325-26 (S.D.N.Y. 2011) ("The Court has no way to determine the portion of [the defendant's] compensation that is causally connected to the alleged wrongdoing . . ." );

*SEC v. Chapman*, 826 F. Supp. 2d 847, 859 (D. Md. 2011) ("The SEC does not contend that [the defendant] would not have received his salary or bonuses for those months if the [fraud] had not occurred.").

Finally, because Duckson owned Transactional Finance and TFFM, joint and several liability with TFFM is appropriate here.  (Saylor Aff. ¶ 10, Ex. A (Trial Ex. 794)); *see, e.g., SEC v. Pentagon Capital Mgmt.*, 725 F.3d 279, 288 (2d Cir. 2013) (affirming disgorgement award on joint and several basis); *SEC v. Whittemore*, 659 F.3d 1, 10-12 (D.C. Cir. 2011) (same); *SEC v. C.J.'s Fin.*, 2012 WL 3600239 at *7 (E.D. Mich. July 30, 2012) (awarding disgorgement jointly and severally); *SEC v. Teo*, Civ. No. 04-1815, 2011 WL 4074085, at *7 (D.N.J. Sept. 12, 2011) (same).

Accordingly, the Court will order disgorgement against Duckson and TFFM jointly and severally in the amount of $2,960,771 and will also order prejudgment interest in the amount of $340,862.

### C.    Additional Disgorgement Sought from Duckson

The SEC also seeks disgorgement of the following monies that went to Duckson: (1) $709,500 to Transactional Finance between November 2008 and March 2012 and $210,855 prejudgment interest on that amount; (2) $466,343 for Duckson's American Express bills from February 2009 through January 2011 and $63,209 prejudgment interest on that amount; and (3) $275,000 in direct payments from True North's bank account to Duckson from June 2010 to November 2010, and $31,430 prejudgment interest on that amount.

Specifically, the SEC claims that the evidence at trial shows that the Fund and related entities transferred funds directly to Transactional Finance between November 2008 and March 2012.  (Saylor Aff. ¶¶ 10, 11 & Ex. A (Trial Ex. 794).)  The Fund and related entities made these transfers through US Bank accounts in the name of the Fund and Wells Fargo accounts in the name of True North, CS Southeast, or CS Midwest, all Fund affiliates.  (*See* Trial Tr. at 1617, 1749, 3728-29; Saylor Aff. ¶ 10, Ex. A (Trial Ex. 794).)  Transactional Finance then transferred funds back to the Fund and related entities through these bank accounts.  (Saylor Aff. ¶¶ 10, 11 & Ex. A.)  Saylor based his calculations on True North, the Fund, CS Midwest, CS Southeast, and Transactional Finance's bank records.  (*Id.*)  During all relevant times, Duckson had control of the Fund and related entities.  (*See* Trial Tr. at 1679, 1750- 51.)  These actions and calculations are consistent with the evidence presented at trial and are supported by the jury's verdict.

Additionally, Duckson's American Express credit card bills were paid from the bank accounts of CS Midwest, CS Southeast, TFFM, and True North during the period February 2009 through January 2011.  (Saylor Aff. ¶ 13 & Ex. B.)  Also, True North's bank account made direct payments to Duckson between June 2010 and November 2010.  (*Id*.)  These payments occurred at the point where the Fund and CS Financing had merged to form True North, and Duckson was the President of True North.  Saylor based his calculations of these amounts on payments made to Duckson directly by True North and to American Express directly based on True North, TFFM, the Fund, CS Midwest, and CS Southeast's bank records.  (Saylor Aff. ¶¶ 12-13 & Ex. B.)

19

Again, as with the disgorgement detailed above, the Court finds that the SEC has also shown a reasonable approximation of the additional funds to be disgorged with respect to Duckson, and has sufficiently shown that those funds were causally connected to the fraud as determined by the jury. *See First City Fin. Corp.*, 890 F.2d at 1231. Saylor has accounted for Defendants' arguments about discrepancies relating to the $100,000 loan and the Slingshot loan. (*See* Second Saylor Aff. ¶¶6-17.) And, with respect to business expenses and credit card bills, such payments are properly within the realm of disgorgement. *See SEC v. Utsick*, 2009 WL 1404726 at *7-11 (S.D. Fla. May 19, 2009) (ordering disgorgement of, among other things, amounts paid for the defendant's credit card bills); *SEC v. United Energy Partners, Inc.,* 88 Fed. App'x. 744, 746 (5th Cir. 2004) (internal quotation omitted) ("the overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses").

Accordingly, the Court will order disgorgement against Duckson for the following amounts: $709,500 and $210,855 prejudgment interest on that amount; $466,343 and $63,209 prejudgment interest on that amount; and $275,000 and $31,430 prejudgment interest on that amount.

## IV.  Civil Penalties

The SEC seeks civil penalties against Duckson and TFFM in amounts of $150,000 and $725,000, respectively.

These are the maximum third-tier penalty amounts per violation for violations

occurring after March 14, 2009. [5]

Courts have the authority to impose penalties for securities laws violations under

Section 21(d)(3) of the Exchange Act and Section 20(d) of the Securities Act.  15 U.S.C.

§ 78(u)(d)(3); 15 U.S.C. § 77t(d).  Disgorgement requires only the return of ill-gotten

gains, but does not act as a deterrent penalty.  *SEC v. Brown*, 658 F.3d 858, 860-61

(8th Cir. 2011) (citing *SEC v. Kenton Capital, Ltd.,* 69 F. Supp. 2d 1, 17 (D.D.C. 1998)).

"A civil penalty is intended both to punish the individual violator and to deter future

violations of the securities laws." *United States SEC v. Brown*, 643 F. Supp. 2d 1088,

1090 (D. Minn. 2009), *aff'd sub nom. Brown*, 658 F.3d 858 (citing *SEC v. Marker,*

427 F. Supp. 2d 583, 592 (M.D.N.C. 2006)).

Civil penalties are set in three tiers, with the third and highest tier applying where

the violation both "involved fraud, deceit, manipulation, or deliberate or reckless

disregard of a regulatory requirement" and "directly and indirectly resulted in substantial

losses or created a significant risk of substantial losses."  15 U.S.C. §§ 78u(d)(3)(B)(iii);

77t(d)(2). [6]  "[T]he amount of a civil penalty should be determined in light of the facts and

---

[5]     The SEC is not seeking a civil penalty against the Fund.

[6]     The maximum third-tier penalty for violations committed between
February 3, 2005 and March 14, 2009 is an amount equal to the gross amount of
pecuniary gain to the violator or $130,000 per violation for an individual, or $650,000 for
a corporation.  *See* 17 C.F.R. § 201.1002 and Table II to Subpart E; *SEC v. Keating*, Civ.
No. 10-419, 2011 WL 1549429, at *3 (D. Utah, Apr. 22, 2011).  For violations
committed after March 14, 2009, the maximum third-tier penalty is an amount equal to
the gross amount of pecuniary gain or $150,000 per violation for an individual, or

circumstances of the particular case." *SEC v. Brown*, 643 F. Supp. 2d at 1090 (citing *Marker,* 427 F. Supp. 2d at 592 (internal quotation marks omitted)).

In determining the appropriate amount for civil penalties, courts consider:  (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.  *Id.* (internal citations and quotations omitted).

The SEC argues that third-tier penalties are appropriate because the jury found knowing misconduct against each of the Defendants and because their conduct was egregious.  The SEC also argues that Defendants' actions caused significant losses for investors.  Finally, the SEC notes that it is not seeking the much higher amounts it could in terms of penalties in light of the other relief sought.  The Court agrees.

While it is true that civil penalties do not automatically follow from findings of securities fraud, here, the SEC has shown the violations both "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly and indirectly resulted in substantial losses or created a significant risk of substantial losses . . . ."  15 U.S.C. §§ 78u(d)(3)(B)(iii), 77t(d)(2); *see*, *e.g.*, *Chapman*, 826 F. Supp. 2d at 859 (awarding third tier civil penalties for large losses and the defendant's central role in fraud with scienter).  The jury found that Duckson and TFFM

---

$725,000 for a corporation.  *See* 17 C.F.R. § 201.1004 and Table IV to Subpart E; *SEC v. Lowrance*, Civ. No. 11-3451, 2012 WL 2599127, at *7 (N.D. Cal. July 5, 2012).

knowingly violated the securities laws.  (*See* Verdict; Jury Instructions.)  Duckson and

TFFM induced investors into investing in the Fund by misrepresenting and omitting

information about the riskiness of and other qualities associated with that investment.

Investors lost millions of dollars as a result.  These facts make third tier penalties

appropriate.  Defendants' arguments that some measure of the losses were due to the

economy were rejected by the jury when it found that Duckson and TFFM had violated

the securities laws, and hold no weight here.  *Cf. SEC v. Sunset Mgmt., Inc.*, Civ.

No. 09-6056, 2012 WL 9585419 (D. Or. Oct. 5, 2012) (declining civil penalties based on

consideration of market conditions at the summary judgment stage).

However, despite the fact that the Court is entitled to order third-tier penalties

based on the severity and impact of Defendants' actions, the Court also takes into

consideration Duckson's and TFFM's current financial condition, including the

disgorgement being ordered by this Court in determining the appropriate amount of civil

penalties.  The Court has ordered significant disgorgement, and Duckson's and TFFM's

financial capacity are diminished.  As a result, the Court concludes that civil penalties in

the amount requested should not be ordered.  *SEC v. Robinson*, Civ. No. 00-7452, 2002

WL 1552049, at *12-13 (S.D.N.Y. July 16, 2002) (considering the defendant's claim that

he has no ability to pay when deciding the appropriate amount of civil penalties); *SEC v.

Orr*, Civ. No. 11-2251, 2012 WL 1327786, at *11-12 (D. Kan. Apr. 17, 2012) (weighing

a number of factors in determining the appropriate amount of civil penalties).

Accordingly, the Court will impose civil penalties in the amounts of $50,000 and

$15,000, against Duckson and TFFM, respectively.

## CONCLUSION

The SEC has established that the wrongful conduct at issue in this case was both egregious and done with a high level of scienter.  Moreover, the SEC has shown the conduct was not a single, isolated incident.  As a result of these facts, the jury's clear verdict, and the totality of the evidence before the Court, the Court orders various remedies against Defendants.[7]

## ORDER FOR JUDGMENT

In light of the foregoing, and all the files, records and proceedings herein, it is **HEREBY ORDERED** that:

1.      On October 22, 2013, the jury reached a verdict in favor of Plaintiff on each of the following counts based on two time periods (between March 2008 through late October 2008 ("Period 1") and October 2008 through December 2009 ("Period 2")): (1) Count I (direct violations of Section 10(b) of the Exchange Act, and Rule 10b-5, promulgated thereunder, against the Fund for Period 1 and Period 2, and against Duckson and the Fund for Period 2); (2) Count II (aiding and abetting the Fund's violations of Section 10(b) of the Exchange Act, and Rule 10b-5, promulgated thereunder, against Duckson for Period 1); and (3) Count III (direct violations of Section 17(a) of the Securities Act against Duckson and the Fund for Period 1 and Period 2)  (Doc. No. [355].)

---

[7]      The SEC has represented that it intends to ask the Court to establish a Fair Fund for the benefit of investors pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 should the Court order disgorgement and civil penalties.

2.      Plaintiff is entitled to judgment on Count I of the Second Amended Complaint against Defendants Duckson, the Fund, and TFFM (Doc. No. [163]).

3.      Plaintiff is entitled to judgment on Count I of the Second Amended Complaint Duckson (Doc. No. [163]).

4.      Plaintiff is entitled to judgment on Count I of the Second Amended Complaint Duckson and the Fund (Doc. No. [163]).

5.      The jury found in favor of TFFM on Count III.  As such, Count III of the Second Amended Complaint (Doc. No. [163]) as asserted against TFFM is **DISMISSED WITH PREJUDICE**.

6.      Plaintiff's Motion for Remedies (Doc. No. [360]) is **GRANTED IN PART AND DENIED IN PART** as follows:

a.      Capital Solutions Monthly Income Fund, LP (f/k/a Hennessey Financial Monthly Income Fund, LP), Transaction Finance Fund Management, LLC, and Todd A. Duckson are permanently enjoined from committing any future violations of the following Sections of the Securities Exchange Act of 1934:  Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder; Section 17(a) of the Securities Act; and from aiding and abetting violations of any securities laws;

b.      Todd A. Duckson is barred from serving as an officer or director of a publicly traded corporation for a period of ten years from the date the judgment in this action is entered;

c.      Capital Solutions Monthly Income Fund, LP (f/k/a Hennessey Financial Monthly Income Fund, LP) is ordered to disgorge $12,063,430, plus prejudgment interest in the amount of $2,519,751;

d.      Todd A. Duckson and Transaction Finance Fund Management, LLC are jointly and severally ordered to disgorge $2,960,771, plus prejudgment interest in the amount of $340,862;

e.      Todd A. Duckson is additionally ordered to disgorge the following:  $709,500 and $210,855 prejudgment interest on that amount; $466,343 and $63,209 prejudgment interest on that amount; and $275,000 and $31,430 prejudgment interest on that amount.

f.      The Court imposes civil penalties against Todd A. Duckson and Transaction Finance Fund Management, LLC in the amounts of $50,000 and $15,000, respectively.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  June 27, 2014            s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge