## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Securities and Exchange Commission,

                Plaintiff,

v.

Capital Solutions Monthly Income Fund, LP,
f/k/a Hennessey Financial Monthly Income
Fund, LP; Transactional Finance Fund
Management, LLC; and Todd A. Duckson,

                Defendants.

Civ. No. 10-3995 (DWF/JJK)


**MEMORANDUM
OPINION AND ORDER**

---

Benjamin J. Hanauer, Esq., Daniel J. Hayes, Esq., Eric M. Phillips, Esq., and Marlene B. Key, Esq., counsel for the United States Securities and Exchange Commission.

Bryant D. Tschida, Esq., and Lawrence J. Field, Esq., Stinson Leonard Street LLP, counsel for Defendants Capital Solutions Monthly Income Fund, LP, and Transactional Finance Fund Management, LLC.

Scott R. Carlson, Esq., DC Law Chartered, counsel for Todd A. Duckson.

---

### INTRODUCTION

This matter is before the Court on Defendant Todd A. Duckson's ("Duckson")

Motion for a New Trial.  (Doc. No. 395.)  For the reasons set forth below, the Court

denies the motion.

**BACKGROUND**

The Securities and Exchange Commission ("SEC") commenced this action in September 2010, asserting a number of claims relating to alleged fraud in the offer and sale of certain investments.

A number of claims were dismissed on summary judgment, however, the SEC proceeded to trial in September 2013 on the remaining securities violations claims. At the time of trial, Defendants included Capital Solutions Monthly Income Fund, LP (the "Fund"), the Fund's investment manager, Transactional Finance Fund Management, LLC ("TFFM"), and attorney Duckson, who formed, owned, and controlled TFFM (collectively, "Defendants"). The trial included approximately five weeks of testimony and the admission of more than 300 exhibits. (*See* Doc. No. 358.) The jury returned a verdict finding the Fund, TFFM, and Duckson liable on Counts I, II, and III of the Second Amended Complaint. (Doc. No. 355 ("Special Verdict Form").)

The Special Verdict Form separately addressed two time periods: (1) March 2008 through late October 2008 ("Period 1"); and (2) October 2008 through December 2009 ("Period 2"). (*Id.*) Specifically, with respect to Period 1, the jury found liability for the following: (1) direct violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, promulgated thereunder ("Section 10(b) & Rule 10b-5"), by the Fund; (2) aiding and abetting the Fund's violations of Section 10(b) & Rule 10b-5 by Duckson; and (3) direct violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") by Duckson and the Fund. (*Id.*) With respect to Period 2, the jury found liability for the following: (1) direct violations of Section 10(b) & Rule 10b-5

2

by Duckson, the Fund, and TFFM; and (2) direct violations of Section 17(a) of the Securities Act by Duckson and the Fund.[1]  (*Id.*)  Additionally, the jury, as finder of fact, concluded that, during Periods 1 and 2, Duckson and the Fund's direct violations of Section 17(a) were made knowingly, with recklessness, and negligently.  (*Id.*)  The jury also necessarily found that Defendants' violations of Section 10(b) & Rule 10b-5 were made knowingly or with reckless disregard.  (Doc. No. 354 ("Jury Instructions").)

In November 2013, the SEC sought remedial relief from the Court (*see* Doc. No. 362), which the Court largely granted (*see* Doc. No. 392).  Specifically, the Court ordered the following:  (1) that the Fund, TFFM, and Duckson be permanently enjoined from committing any future violations of the Exchange Act and the Securities Act, and from aiding and abetting violations of any securities laws; (2) that Duckson be barred from serving as an officer or director of a publicly traded corporation for a period of ten years from the date the judgment in this action was entered; (3) disgorgement by the Fund in the amount of $12,063,430, plus prejudgment interest in the amount of $2,519,751; (4) joint and several disgorgement by Duckson and TFFM in the amount of $2,960,771, plus prejudgment interest in the amount of $340,862; (5) additional disgorgement by Duckson in the amount of $709,500 and $210,855 prejudgment interest on that amount, $466,343 and $63,209 prejudgment interest on that amount, and $275,000 and $31,430 prejudgment interest on that amount; and (6) civil penalties against Duckson and TFFM in the amounts of $50,000 and $15,000, respectively.

---

[1]     The jury returned a verdict finding TFFM not liable for direct violations of Section 17(a) of the Securities Act.

Duckson now seeks a new trial or, alternatively, an amended judgment.  (Doc.

No. 396.)

## DISCUSSION

### I.    Legal Standard

Duckson seeks a new trial under Rule 59(a) of the Federal Rules of Civil

Procedure.  Under Rule 59(a), a "court may, on motion, grant a new trial on all or some

of the issues—and to any party . . . after a jury trial, for any reason for which a new trial

has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).

"[D]istrict courts enjoy broad discretion in choosing whether to grant a new trial."  *Pulla

v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995).  The standard for granting a new trial

is whether the verdict is against "the great weight of the evidence."  *Butler v. French*,

83 F.3d 942, 944 (8th Cir. 1996).  As explained by the Eighth Circuit:

> [A] trial court may not grant a new trial simply because the trial court
> would have found a verdict different from the one the jury found. This is
> certainly a necessary condition to granting a motion for new trial, but it is
> not a sufficient one.  Rather, the trial court must believe, as we have already
> said, that the verdict was so contrary to the evidence as to amount to a
> miscarriage of justice.

*Id.*  In addition to a verdict that is against the weight of the evidence, an excessive

damage award or legal errors at trial can also merit a new trial.  *Gray v. Bicknell*, 86

F.3d 1472, 1480-81 (8th Cir. 1996).  Thus, a new trial is merited when "the verdict is so

contrary to the preponderance of the evidence as to imply that the jury failed to consider

all the evidence, or acted under some mistake."  *In re Levaquin Prods. Liab. Litig.*, 700

F.3d 1161, 1166 (8th Cir. 2012) (internal citations and quotations omitted).  Evidentiary

errors warrant a new trial only when "the cumulative effect of the errors is to substantially influence the jury's verdict." *Williams v. City of Kansas*, 223 F.3d 749, 755 (8th Cir. 2000).

Duckson also seeks an amended judgment under Rule 59(e) of the Federal Rules of Civil Procedure. "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal quotations omitted); *see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). Relief under Rule 59(e) is granted only in "extraordinary" circumstances. *United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986).

## II.   New Trial

### A.   Appraisals

Duckson first argues that the Court committed error by refusing to allow certain complete appraisals to timely go to the jury. Specifically, Duckson argues that he had third-party appraisals prepared by commercial real estate experts that showed a positive net value for the Fund's real estate investments. According to Duckson, the appraisals show that his belief that the Fund had not "collapsed" was justified and that he therefore did not make misrepresentations regarding the quality of those investments. Duckson asserts that the Court "repeatedly rebuffed Duckson's attempt to introduce these

critical—and unchallenged—appraisals at trial," and only allowed small portions of those

appraisals into evidence near the end of the five-week trial.  Duckson argues that not only

did the lack of this evidence prevent the jury from having a complete picture of the

evidence, but further, if that evidence had been admitted, the jury could not have

supported its verdicts regarding scienter.  The Court disagrees.

First, contrary to Duckson's representations, a significant amount of testimony and

documentary evidence relating to the appraisals was presented to the jury.  Multiple

witnesses testified extensively about appraisals, including Duckson himself.  (*See, e.g.*,

Doc. Nos. 377, 379, 384, 386, 387 ("Trial Tr.") at 1052-63, 1322-23, 2458, 2577,

3068-69, 3227-51, 3288-97.)  Documentary evidence included pages from the appraisals

themselves and summary charts showing the property values presented by the appraisals.

(*See, e.g.*, Trial Exs. 1115 & 1251.)  Thus, the jury had the opportunity to consider and

examine the credibility of testimony related to the appraisals.  The jury clearly

determined that it did not accept Duckson's view of the evidence.

Second, during trial the Court carefully considered and ruled on the admission of

testimony relating to appraisals and on the appraisals themselves on a case-by-case basis

and did so consistent with its discretion with respect to evidentiary rulings.  *Rodrick v.

Wal-Mart Stores E., L.P.*, 666 F.3d 1093, 1096 (8th Cir. 2012) ("[T]he district court [is

afforded] broad discretion in its evidentiary rulings, in deference to a district court's

familiarity with the details of the case and its greater experience in evidentiary matters.")

(internal quotations and citation omitted).  For example, certain appraisals were excluded

early in trial for lack of foundation, and certain appraisal-related testimony was excluded

on Rule 403 grounds.  (*See, e.g.*, Trial Tr. at 705-08, 1152-55, 1599-1601.)  Such determinations are properly within the discretion of the trial court.

Finally, the Court's evidentiary rulings on the relevance and prejudicial nature of certain information regarding the appraisals are consistent with the totality of the evidence presented at trial.  For example, as Plaintiff notes, Duckson began his appraisal process in January 2009, sometime after he made a number of misrepresentations to brokers and investors.  (*See* Trial Tr. at 3161-62, 3273; *see also* Trial Exs. 23, 95.)  Thus, the exclusion of certain testimony and exhibits relating to appraisals was not in error and does not merit a new trial.

In sum, the Court's evidentiary rulings with respect to appraisals were proper and the jury's verdict is supported by the evidence.  Consequently, there was no miscarriage of justice.  A new trial is not merited based on the Court's evidentiary rulings relating to the appraisals.

### B.     Special Verdict Form

Duckson also argues that the Special Verdict Form so "muddied" the jury's verdict that a new trial is warranted.  Specifically, Duckson asserts that because the Special Verdict Form was divided into two time periods, and both time periods included alleged misrepresentations associated with a single document from March 2008, it is not clear whether the jury found multiple misstatements (with at least one in each time period), or whether the jury simply assigned the misrepresentations associated with the March 2008 document to both time periods, thereby indicating that they found more than one misrepresentation.  Put simply, Duckson argues the jury's verdict was confusing.

Duckson argues that the confusing nature of the verdict impacts not only the jury's

liability determinations, but also this Court's decision on remedies.

The Court concludes that the jury verdict was not confusing.  First, the Court finds

that Defendant's concern that the jury assigned misrepresentations from the March 2008

document to Period 2 is without merit.  In the Jury Instructions, the Court explicitly

carved out the March 2008 document from Period 2 as a basis for misrepresentations.

Specifically, the Jury Instructions included the following language:

> The relevant time period will determine which documents and alleged
> misrepresentations or omissions are applicable for each claim.  The SEC's
> case alleges that misstatements and omissions were made in:
>
> **For Time Period 1:**
> (1) the Fund's offering documents dated March 2008; and
> (2) update letters dated May 2008 and October 2008.
>
> **For Time Period 2:**
> (1) the Fund's offering documents dated November 2008, February 2009,
> and November 2009;
> (2) update letters to existing investors dated February 24, 2009 and to
> brokers dated February 10, 2009; and
> (3) a February 2009 question and answer sheet to existing investors to offer
> them the Fund's new offering of "Series I Preferred Notes."

(Doc. No. 354 at 13-15.)  Thus, the jury necessarily based its verdict on more than the

March 2008 document.

Second, the Court concludes that the Special Verdict Form was proper.  The

Special Verdict Form was consistent with the Eighth Circuit Manual of Model Civil Jury

Instructions in addressing what the jury needed to know for the case and in remaining

appropriately succinct.  Further, contrary to Duckson's arguments, the Court incorporated

elements of Duckson's and Plaintiff's proposed verdict forms.  (*Compare* Doc. Nos. 263 *with* 270 *and* 355.)  The Special Verdict Form, in conjunction with the Jury Instructions, was also not as "general" as Duckson alleges because it included details relating to two different time periods, actions of different entities, and accounted for a number of different sources of misrepresentations.  As a result, the Special Verdict Form presented the jury with all necessary information and in the most simple and clear form possible, given the nature of the case, and to allow the jury to render an unambiguous and decisive verdict.  Because the Special Verdict Form was not ambiguous and because the jury's verdict is supported by the totality of the evidence presented at trial, the verdict is not "against the great weight of the evidence" and the Court's remedies determinations, including for disgorgement, are supported by that verdict.

Thus, given the above, and viewing the trial record as a whole, the "cumulative effect" of any evidentiary errors relating to appraisals or any errors relating to the Special Verdict Form did not "substantially influence the jury's verdict."  *See Williams*, 223 F.3d at 755.  The evidence presented supports the jury's verdict, and Plaintiff met its burden in the case.  In sum, the verdict was not "so contrary to the evidence as to amount to a miscarriage of justice," thereby requiring a new trial.  *See Butler*, 83 F.3d at 944.

## III.   Amended Judgment

For the reasons set forth above with respect to a new trial, the Court also finds that Duckson's request for an amended judgment is without merit.  The above presents no "manifest errors of law or fact" and no "newly discovered evidence" that would merit an amended judgment.  *See Metro. St. Louis*, 440 F.3d at 933.  Further, relief under

9

Rule 59(e) is only granted in "extraordinary" circumstances, and there are no such circumstances present here.

### ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Todd A. Duckson's Motion for New Trial (Doc. No. [395]) is **DENIED**.

Dated:  December 18, 2014                              s/Donovan W. Frank
                                                                       DONOVAN W. FRANK
                                                                       United States District Judge